UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 09-10977-RWZ

RANIAH FATHI ATIEH
and FUAD FAROUQ ATIEH

v.

DENIS RIORDAN, *Director, Boston Service Center,*
ALEJANDRO MAYORKAS, *Director, USCIS,*
JANET NAPOLITANO, *Secretary, Department of Homeland Security,*
ERIC H. HOLDER, JR., *United States Attorney General,*
and MICHAEL K. LOUCKS, *Acting United States Attorney, District of Massachusetts*

MEMORANDUM OF DECISION

October 2, 2012

ZOBEL, D.J.

Plaintiffs Raniah Fathi Atieh and Faud Farouq Atieh seek judicial review of the decision of the Board of Immigration Appeals ("BIA") to affirm the United States Citizenship and Immigration Service ("USCIS") denial of a Form I-130 Petition for Alien Relative filed by Raniah Fathi Atieh on behalf of her husband Fuad Farouq Atieh. Defendants move to dismiss the amended complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim (Docket # 18), and their motion is allowed.

**I. Background**

This immigration case has a muddled and lengthy procedural history. Plaintiffs filed two successive I-130 petitions, both of which were denied on the basis of evidence of prior marriage fraud. Plaintiffs' amended complaint challenges the decisions of the

BIA and USCIS on both petitions, yet does not clearly distinguish which allegations pertain to which decisions. Moreover, the denial of the first petition was effectively superseded by the denial of the second petition, such that review of the former is moot. Thus, the court focuses its review on the BIA's April 8, 2011, decision affirming the USCIS denial of plaintiffs' second petition and examines the earlier decisions and proceedings only to the extent that they comprise part of the overall record considered by the BIA. That record reflects the following:

USCIS placed plaintiff Fuad Farouq Atieh ("Fuad"), a citizen of Jordan, in removal proceedings on March 17, 2003. On January 23, 2004, in Lowell, Massachusetts, Fuad married his first cousin Jamileh Khudari ("Jamileh"), a United States citizen. Shortly thereafter, on February 27, 2004, Jamileh filed an I-130 Petition for Alien Relative on behalf of Fuad. The petition was withdrawn, however, as the couple separated in the summer of 2004 and divorced on December 12, 2004.

Less than a year later, on August 23, 2005, Fuad married plaintiff Raniah Fathi Atieh ("Raniah"), a United States citizen, in Illinois. On November 8, 2005, Raniah filed an I-130 petition on Fuad's behalf.

On March 3, 2006, USCIS interviewed plaintiffs in connection with the I-130 petition. The examining officer questioned Fuad regarding his previous marriage to his cousin Jamileh. Fuad indicated that his first marriage was arranged by the couple's parents and that he was never in love with Jamileh before, during, or after his marriage to her. Fuad also stated that he married due to parental pressure and described his marital relationship with Jamileh as "weird" given their existing relationship as first

cousins. During the interview, Fuad acknowledged that he and his family "all hoped I could get my residence here through [Jamileh]."

On May 8, 2006, USCIS issued a Notice of Intent to Deny (NOID) the I-130 petition under Section 204(c) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1154(c), which prohibits the approval of visa petitions if the alien has previously sought to obtain an immigration benefit based on a fraudulent marriage. The NOID concluded that Fuad's actions with respect to his first marriage amounted to entering marriage to evade immigration law.

In response, plaintiffs submitted statements from Fuad, his ex-wife Jamileh, Fuad's parents, and Jamileh's parents. Fuad's statement described Arab Islamic cultural customs that made it difficult for him to find a wife in the United States and the process by which he came to marry his cousin Jamileh. Though Fuad and Jamileh "never dated and spent time as a couple," they had always shared a close relationship as cousins and were convinced by their families that "love does grow after marriage." Fuad stated that after getting married, the couple "tried to spend time together alone" but "did not act like a husband and wife act together." He also acknowledged that prior to marrying Jamileh, he had contacted Raniah's parents and expressed romantic interest in their daughter, but was turned away.

In her statement, Fuad's ex-wife Jamileh admitted that she had "never thought that [she and Fuad] would be married," but that she was convinced by her family and cultural background that the arranged marriage would work and was "very excited" to marry Fuad. Jamileh stated, however, that they could not overcome their past

relationship as cousins and "began to feel uncomfortable around each other," such that she "felt a sense of relief inside" when Fuad expressed a desire to end the marriage. Nevertheless, Jamileh insisted that her marriage to Fuad "was not to provide him with immigration benefits."

Statements from Jamileh's and Fuad's parents emphasized that marriage between cousins is common in Jordanian culture and that they had encouraged Jamileh and Fuad to marry because they "truly thought it would be great for the family." The parents confirmed, however, that following the marriage, Fuad and Jamileh "seemed very uncomfortable" and "could not get past the fact that they are first cousins and always had such a close relation as cousins." The parents acknowledged that they knew "[Fuad] would get an immigration benefit" by marrying Jamileh, but insisted that the primary goal was for the couple to have a good marriage.

On December 6, 2007, USCIS denied the I-130 petition, finding that the "totality of the record indicates [Fuad] entered a fraudulent marriage to evade immigration law within the meaning of Section 204(c)" of the INA. On March 25, 2009, the BIA affirmed the denial on the grounds that it was supported by evidence in the record. In addition to the interview testimony and the statements submitted by plaintiffs, the BIA decision cited a statement made by Fuad's legal representative in consideration of a motion to terminate removal proceedings on August 27, 2003, that Fuad had been seeing a young woman in the Chicago area who is a citizen of the United States and that they had discussed the possibility of marriage. "[B]ased on [Fuad's] express statement at his interview that his parents had hoped he would acquire lawful permanent residence

through his cousin, coupled with the evidence that [Fuad] was pursuing a romantic relationship with his current spouse at that time," the BIA found that plaintiffs had failed to establish that Fuad's first marriage was bona fide.  On November 4, 2009, plaintiffs' motion to reconsider was denied.

     Raniah filed a second I-130 petition on behalf of Fuad on June 11, 2009.  USCIS issued an NOID on that petition on March 25, 2010, informing plaintiffs that the testimony and documents provided were insufficient to satisfy Fuad's burden to establish his eligibility for an immigrant visa because of his prior marriage fraud.  The NOID noted that while an affidavit from Dr. Denis J. Sullivan, a family friend and professor of Middle Eastern studies at Northeastern University, explained the custom of marriages between cousins and arranged marriages in Middle Eastern culture, such information was not relevant with respect to the bona fides of Fuad's first marriage, which was previously found to be fraudulent not because it was between cousins or may have been arranged by the family, but because of substantial and probative evidence that the marriage was not entered into in good faith.  Affidavits from other family members, including cousins which have married, provided no evidence that the marriage between Fuad and Jamileh was in good faith, and bank statements submitted by the plaintiffs did not establish a commingling of marital funds between Fuad and his former wife.  Thus, the NOID concluded that the new evidence submitted did not overcome Fuad's prior testimony that his goal was to obtain permanent residence through marriage to Jamileh, nor did it negate the evidence of Fuad's romantic pursuit of Raniah prior to and during his first marriage.

On May 5, 2010, USCIS denied the petition for lack of evidence that Fuad's first marriage was bona fide and not for the purpose of evading immigration law under Section 204(c), reiterating the findings set forth in the NOID.  Plaintiffs appealed once more to the BIA, which affirmed the denial of the second petition on April 8, 2011.  The BIA cited the evidence evaluated by USCIS and concluded that the entire record, including the "additional evidence received since the Board's prior decisions" on the first petition, did not contain sufficient evidence to establish that Fuad's first marriage was bona fide.

Plaintiffs initiated this action for declaratory relief on June 8, 2009, following the denial of their first I-130 petition.  Defendants filed a motion to dismiss for lack of jurisdiction and failure to state a claim, which the court held in abeyance until a final administrative ruling on plaintiffs' pending second I-130 petition.  Following the denial of the second petition and the outcome of its appeal to the BIA, the court allowed plaintiffs' motion to amend their complaint and reactivate the case.

Plaintiffs filed an amended complaint on June 8, 2011, challenging the decisions of the BIA and USCIS to deny Raniah's I-130 petitions on behalf of Fuad as "contrary to the INA and its implementing regulations, [ ] arbitrary and capricious, and . . . an unwarranted departure from existing policies and precedents that have violated the [p]laintiffs' due process rights."  They assert that the BIA applied the wrong standard of proof in assessing whether Fuad's first marriage comes within the purview of Section 204(c) and that there was not substantial and probative evidence to support a conclusion that the marriage was fraudulent.  They also accuse the BIA of

6

overemphasizing Fuad's family's hope that he could acquire lawful permanent residence through marrying Jamileh and his prior romantic interest in Raniah, as well as misconstruing evidence in the bank statements and ignoring photographs submitted as evidence of the bona fide nature of Fuad's first marriage.

Defendants moved to dismiss for failure to state a claim (Docket # 18) because plaintiffs failed to allege facts to support a finding that the agency decision was arbitrary and capricious. Defendants argue that plaintiffs are not actually challenging the standard of proof applied by the BIA, but rather the conclusion reached when applying that standard. Defendants state that even plaintiffs' version of the facts shows that the BIA considered the record as a whole and issued a well-reasoned decision based on the facts and evidence before it.

## II. Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). The facts pleaded must allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. When ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court accepts as true all factual allegations contained in the complaint, but not legal conclusions. Id.

The court has jurisdiction pursuant to the Administrative Procedure Act ("APA"), 5. U.S.C. § 701 et seq., and the federal-question jurisdiction statute, 28 U.S.C. § 1331.[1] Under the APA, the court reviews agency decisions to determine if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). Review under the arbitrary and capricious standard is highly deferential, and the court "may not substitute its judgment for that of the agency, even if it disagrees with the agency's conclusions." River Street Donuts, LLC v. Napolitano, 558 F.3d 111, 114 (1st Cir. 2009). The agency's final determination is afforded a presumption of validity and must be upheld if found to be supported by a rational basis. Id.; Town of Winthrop v. FAA, 535 F.3d 1, 8 (1st Cir. 2008) ("An agency's decision is not arbitrary and capricious if that decision was based on consideration of the relevant factors and if it did not commit a clear error of judgment.").

---

[1] In their initial motion to dismiss filed September 10, 2009, defendants challenged the court's subject matter jurisdiction, asserting that the jurisdiction-stripping provision of 8 U.S.C. § 1252(a)(2)(B)(ii) precludes judicial review because the underlying determination regarding Fuad's first marriage is a decision in the discretion of the Secretary of Homeland Security. Defendants have not, however, raised the issue again in their motion to dismiss the amended complaint.

A number of circuits have held that 8 U.S.C. § 1252(a)(2)(B)(ii) does not bar judicial review of I-130 petitions which were denied due to findings of prior fraudulent marriage. See, e.g., Ginters v. Frazier, 614 F.3d 822, 827-829 (8th Cir. 2010) (holding that district court had jurisdiction to review I-130 petition which was denied under 8 U.S.C. § 1154(c) for prior fraudulent marriage); Ruiz v. Mukasey, 552 F.3d 269, 276 (2d Cir. 2009) (holding that "a district court may properly exercise jurisdiction" over a case challenging denial of I-130 petition due to prior fraudulent marriage); Ayanbadejo v. Chertoff, 517 F.3d 273, 278 (5th Cir. 2008) ("Determinations regarding the validity of marriage for I-130 petition purposes are not discretionary within the meaning of § 1252(a)(2)(B), and thus are subject to review by courts."); Ogbolumani v. Napolitano, 557 F.3d 729, 733 (7th Cir. 2009) (court has jurisdiction to review I-130 petition denied on the basis of 8 U.S.C. § 1154(c)). While the First Circuit has not yet addressed the question of jurisdiction directly, there are cases in this circuit in which courts have reviewed denials of I-130 petitions based on determinations of prior fraudulent marriages. See, e.g., Syed v. Ashcroft, 389 F.3d 248 (2004); Akinwande v. Ashcroft, 380 F.3d 517 (1st Cir. 2009).

Given the outstanding case law on this issue and defendants' failure to reassert it as grounds for dismissal, the court assumes subject-matter jurisdiction and proceeds with review.

Thus, if plaintiffs do not establish that it is plausible the agency decision here was arbitrary and capricious, they have failed to state a claim upon which relief can be granted, and their complaint must be dismissed.

## III.  Discussion

The amended complaint fails to state a claim under the APA because plaintiffs cannot show that the actions of the BIA were arbitrary and capricious.  The BIA affirmed USCIS' denial of plaintiffs' second I-130 petition pursuant to Section 204(c) of the INA, which states:

> Notwithstanding the provisions of subsection (b) of this section no petition shall be approved if (1) the alien has previously been accorded, or has sought to be accorded, an immediate relative or preference status as the spouse of a citizen of the United States or the spouse of an alien lawfully admitted for permanent residence, by reason of a marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws, or (2) the Attorney General has determined that the alien has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws.

8 U.S.C. § 1154(c).  A determination of marriage fraud or attempted marriage fraud under Section 204(c) must be supported by "substantial and probative" evidence. Matter of Tawfik, 20 I. & N. Dec. 166, 167 (BIA 1990).  In visa petition proceedings, the applicant has the burden of establishing eligibility, including the absence of prior marriage fraud.  Matter of Brantigan, 11 I. & N. Dec. 493 (BIA 1966).

The BIA thoroughly considered the law and facts in deciding to affirm USCIS' denial of plaintiffs' petition based on "substantial and probative evidence indicating that [Fuad's first] marriage was not entered into in good faith."  The BIA reviewed interview testimony, documentary evidence, affidavits, and prior immigration

9

proceedings and reasonably concluded that the information submitted by plaintiffs did not overcome the probative strength of Fuad's testimony concerning his family's hope that he might obtain lawful residential status through marriage to his cousin and the circumstances surrounding that brief relationship. While acknowledging that arranged marriages are not fraudulent per se, so long as the parties at the time of the marriage intended to establish a life together, the BIA nonetheless determined that evidence of Fuad's romantic pursuit of Raniah even before his first marriage "indicates that [Fuad's] intention all along was to marry [Raniah] and not remain married to his former wife." The BIA provided a thorough written decision explaining the evidence in the record against plaintiffs and its reasons for discounting other evidence as not relevant or insufficient. Plaintiffs were afforded ample opportunity to submit additional evidence, all of which the BIA considered in ultimately concluding that plaintiffs had not established that Fuad's first marriage was in good faith.

The court finds that the BIA's actions in denying plaintiffs' I-130 second petition were rationally based on consideration of the entire record and were not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Accordingly, plaintiffs have failed to state a claim upon which relief can be granted.[2]

**IV. Conclusion**

---

[2] Other than generally alleging "an unwarranted departure from existing policies and precedents," the amended complaint fails to articulate how defendants' actions violated the due process rights of plaintiffs. To the extent that plaintiffs are indeed asserting a due process violation, the court finds that the allegations in the amended complaint are insufficient to state a claim upon which relief can be granted.

Defendants' motion to dismiss the amended complaint (Docket # 18) is ALLOWED.

Judgment may be entered dismissing the complaint.

|  |  |
|---|---|
| <u>    October 2, 2012    </u> | <u>        /s/Rya W. Zobel        </u> |
| DATE | RYA W. ZOBEL |
|  | UNITED STATES DISTRICT JUDGE |